REGAN, Judge.
Plaintiff, Roy W. Barnes, conducting his business under the trade name of B. & B. Construction Company, instituted this suit against John Saia endeavoring to recover the sum of $1,396.16 with interest of five percent from December 8, 1950, until paid, alleged to be due by virtue of the substantial consummation of repairs, remodelling and alterations affecting defendant’s apartment house in No. 1631 Esplanade Avenue under a written contract dated October 23, 1950, prepared and signed by plaintiff and orally accepted by defendant. Plaintiff, in.the alternative, pleads that in the event the court is of the opinion that no contract existed, then plaintiff should be permitted to recover on a quantum meruit the sum of $1,736.46.
Defendant answered and denied the execution of the contract, but conceded that the value of the work performed by plaintiff amounted to $1,443.00; ■ that he was entitled to deduct therefrom the sum of $785.90, the cost of repairing the defective work and completing the unfinished portion thereof, thus leaving a balance due plaintiff of $707.10, which defendant has deposited in the registry of the Civil District Court for the Parish of Orleans.
From a judgment in favor of plaintiff in the amount of $1,390.93, with 5% interest from December 8, 1950, until paid, defendant prosecutes this appeal.
The record reflects that in contemplation of the -repairs, remodelling and alterations to be made in 1631 Esplanade Avenue, plaintiff and the defendant visited the building and roughly • calculated the cost thereof. 'Subsequently on October 23, 1950, plaintiff refin.ed these calculations, which he reduced to writing in the form of a contract which he mailed to defendant' for his signature.
A dispute exists, as to why the contract was not signed. 'Defendant maintains that “the contract was never signed because there were so many items of. work, which plaintiff had agreed to do verbally which were not included in the written contract.” Plaintiff, in opposition thereto, points out that -the contract was in defendant’s possession about ten days before the inception of the work, during which interval defendant requested and urged plaintiff to begin the work and -defendant promised to sign the contract and return it to plaintiff; that in reliance thereon plaintiff commenced the work in conformity with the terms of the contract. In any event, the plaintiff actually. began the alterations on or about November 8, 1950 and, on December 8, 1950. or two days before the work would have been completed, defendant informed plaintiff that he was dissatisfied and ordered him to immediately discontinue the work and remove himself and employees from the. premises. Defendant insists that on innumerable occasions he had complained of the unworkmanlike character of the repairs or alterations which ultimately resulted in the discharge of plaintiff before the work w;as fully completed. Plaintiff, on the other hand, testified that “defendant was on the job from two hours to all day” every day; that “he was residing downstairs at the time” and that defendant had never expressed dissatisfaction with his skill until -the day he was ordered to terminate .his activities.
Plaintiff produced two witnesses whom he employed to aid in the fulfillment of the contract, namely, Ivy Boudreaux and *438 George Stiller, each of whom testified both as to the good quality of the repairs or alterations and that defendant had never complained about the unskillful character of the work to them or to' plaintiff in their presence. He also introduced the testimony of Irwin McAdams, a subcontractor engaged by him to do the tiling, and Anthony Eschete, a subcontractor likewise engaged by him for his skill as a cabinet maker, each of whom testified as to his own craftsmanship and artistry in consummating the work for which he had been employed by the plaintiff.
The record further discloses that there were several other tradesmen actively engaged in effecting repairs or alterations in other parts of the building, and who were in a position to be aware of what was transpiring, but that defendant failed to produce any of them as witnesses in corroboration of his “many complaints” relative to the unworkmanlike character of plaintiff’s “repairs” or any other expert testimony touching upon plaintiff’s lack of skill or craftsmanship. In this connection defendant was only corroborated by his wife, Mrs. Viola Saia.
Plaintiff testified that the contract amounted to $1,345.00, extras $228.16, or a total of $1,573.16, less the sum of $177 the value of unfinished work which plaintiff failed to complete due to defendant having directed him to terminate his activities, leaving a balance due and owing to plaintiff of $1,396.16.
Defendant, on the other hand, concedes that the contract price amounted to $1,345 and that the only extras for which he was liable amounted to $98 making a total of $1,443 and that he was entitled to deduct therefrom the sum of $735.90, the cost of repairing the defective work and of completing the unfinished portion thereof, leaving a balance due plaintiff of $707.10, which, as we have heretofore stated, has been deposited in the registry of the 'Civil District Court.
Counsel for plaintiff and defendant both concede that the only questions posed for our consideration are ones of fact and they are (1) did a contract exist between the parties, and (2) if so, were the repairs or alterations performed in a workmanlike manner ?
The trial court answered both of these questions in the affirmative and our careful examination of the record discloses no error in its conclusions. The trial judge in his written reasons for judgment was of the opinion: “It is true the contract was not signed by the defendant, but it is evident that he tacitly consented thereto.”
He was of the further opinion: “Plaintiff has produced himself and four witnesses, who all testified that the work performed had been done in a workmanlike manner. The evidence preponderates to the effect that the defendant made no serious complaints about the work until about two days before he terminated it on December 8th, 1950, although he was present on numerous occasions and saw its progress. * * * If plaintiff was performing in an unworkmanlike manner, when he saw that situation, the defendant should then and there terminated his relations with plaintiff. Defendant produced no expert witness, who examined the work and the only evidence that the work was not performed in a workmanlike manner is by himself and his wife. On the whole defendant has produced no evidence which the court can accept against that adduced ¡by the plaintiff.”
The difference between the amount prayed for by plaintiff and the amount awarded by the trial judge is accounted for by virtue of the fact that on addendum No. 1, plaintiff claimed $103.23 for “extras”, whereas the trial judge permitted him to recover the sum of $98 or $5.23 less than plaintiff had requested in his prayer for judgment. The record also discloses that the-trial judge was correct in effecting this reduction.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.